UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERESA COLEGROVE,


                              Plaintiff,

                                                          DECISION AND ORDER

                                                          98-CV-6559L


               v.

COMMISSIONER OF SOCIAL SECURITY,


                              Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final

determination of the Commissioner of Social Security ("the Commissioner") that Teresa Colegrove

("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to Social

Security Disability Insurance  (Title II) or Supplemental Security Income (Title XVI)  benefits.

Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to

FED. R. CIV. P. 12(c). (Dkts. ## 17 and 24).  For the reasons discussed below, plaintiff's motion (Dkt.

#17) is granted and the Commissioner's motion (Dkt. #24) is denied.  The case is remanded solely

for the calculation and payment of benefits.

## PROCEDURAL HISTORY

This case has a long and tortured history that dates back more than twelve years. Plaintiff first applied for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits on June 3, 1993. (T. 88-90, 110-13).[1] These applications were denied initially (T. 92, 106-09, 114-18), and no further action was taken.

On March 8, 1994, plaintiff filed a second set of applications for SSD and SSI, which were denied initially and on reconsideration. (T. 124-27, 130-31, 153-56). A hearing was held before Administrative Law Judge ("ALJ") James E. Dombeck on January 10, 1996, at which plaintiff appeared with counsel and testified. (T. 660-97). On February 23, 1996, ALJ Dombeck issued a decision finding that plaintiff was not disabled at step five of the sequential evaluation for determining disability. (T. 329-44). Using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, ALJ Dombeck found that, although plaintiff could not return to her past relevant work, she retained the capacity to perform other work that existed in the national economy.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied the request on November 8, 1996. (T. 350-51). On December 5, 1996, the Appeals Council vacated its prior decision in order to consider additional evidence and further arguments, but then declined again to modify or reverse ALJ Dombeck's decision. (T. 352-53).

Plaintiff commenced her first civil action in this Court on November 11, 1996, seeking review of the Commissioner's final determination that she was not disabled. *See Colegrove v. Apfel*, 96-CV-6582T. By Decision and Order dated November 7, 1997, United States District Court Judge

---

[1] "T. __" refers to the page of the administrative transcript filed by the Commissioner.

Michael A. Telesca remanded the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. Judge Telesca found that ALJ Dombeck's decision was not supported by substantial evidence and was based on legal error. The Court ordered the Commissioner to obtain the testimony of a vocational expert and to properly weigh the opinions of plaintiff's treating physicians. (T. 355-72). On December 27, 1997, in accordance with the District Court's Order, the Appeals Council vacated ALJ Dombeck's first decision and remanded the case for another administrative hearing.

While her civil action was pending in District Court, plaintiff filed a third set of applications for SSD and SSI benefits on November 19, 1996. (T. 408-411). These applications, too, were denied initially and on reconsideration, on March 13, 1997 and June 28, 1997, respectively. (T. 393-97, 400-402). Plaintiff requested an administrative hearing.

On July 7, 1998, ALJ Dombeck consolidated plaintiff's two pending sets of applications and held a single supplemental hearing. In accordance with Judge Telesca's remand Order, a vocational expert testified at the hearing. On September 24, 1998, ALJ Dombeck issued a second unfavorable decision, finding that plaintiff was not disabled at any time from June 4, 1993 through the date of the decision. He concluded, as he had the first time, that even with her various impairments, plaintiff retained the capacity to perform a significant number of jobs in the national economy. (T. 784-91).

On December 2, 1998, plaintiff commenced the instant action in United States District Court. On August 6, 1999, this Court remanded the case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g), so that the Commissioner could reconstruct plaintiff's file, which had been lost.

The Court also ordered the Commissioner to pay plaintiff interim benefits and continue those benefits until final determination of the matter by the Court. (Dkt. #10).

A supplemental administrative record was compiled by the Commissioner.  Nevertheless, on July 17, 2000, the Commissioner again requested that the Court remand the case pursuant to sentence six of 42 U.S.C. § 405(g) because ALJ Dombeck did not correctly evaluate the opinions of plaintiff's treating physicians, as required by Judge Telesca's remand Order.  In addition, the Commissioner concluded that the supplemental administrative record was incomplete in many respects and unsuitable for Court review.  (Dkt. #11).

On July 27, 2000, by stipulation of the parties and as ordered by this Court, ALJ Dombeck's second decision was reversed, and the case was remanded a third time.  The Commissioner was ordered to assign the case to a different ALJ to hold a new hearing and decide the disability issue *de novo*.  The Court also ordered that plaintiff continue to receive interim benefits. (Dkt. #12).  This last remand occurred pursuant to sentence six of 42 U.S.C. § 405(g), and the Court retained jurisdiction during the pendency of the administrative proceedings.

On remand, the Appeals Council reassigned the case to ALJ Nancy Lee Gregg. (T. 852).  ALJ Gregg reopened plaintiff's original 1993 applications, and consolidated them with her 1994 and 1996 applications at issue in the case remanded to her.  Plaintiff's disability was evaluated as of June 1, 1993.  ALJ Gregg then held a third administrative hearing on December 12, 2001, at which plaintiff appeared with her counsel and testified.  A vocational expert also appeared and testified.  (T. 24-87).

On August 15, 2002, ALJ Gregg issued a third administrative decision which found that plaintiff was not disabled. (T. 8-22).  Pursuant to 20 C.F.R. § 404.984, plaintiff did not request

review from the Appeals Council, but instead asked the District Court to reopen the matter and to

review ALJ Gregg's August 2002 decision denying her benefits.  That request was granted on May

13, 2003. (Dkt. #13).


## DISCUSSION

### I.    Definition of Disability

Under the Social Security Act ("the Act"), a person is considered disabled when she is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A);

1382c(a)(3)(A).  A physical or mental impairment (or combination of impairments) is disabling if

it is of such severity that a person "is not only unable to do his previous work but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy . . . ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).  To determine whether

a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential

evaluation.  *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770,

774 (2d Cir.1999).

The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial
gainful activity. Where the claimant is not, the Commissioner next considers whether the
claimant has a "severe impairment" that significantly limits her physical or mental ability to
do basic work activities.  If the claimant suffers such an impairment, the third inquiry is
whether, based solely on medical evidence, the claimant has an impairment that is listed in
20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed impairment, the

Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

## II.   ALJ Gregg's August 15, 2002 Decision

Applying the five-step disability evaluation, ALJ Gregg first found that plaintiff had not engaged in substantial activity since her alleged onset date, June 3, 1993. At step two, the ALJ found that plaintiff had mental impairments that were severe, including dysthymia/major depression, mixed personality disorder, anxiety disorder, with a later diagnosis of panic disorder without agoraphobia, and personality disorder with histrionic and dependency features. The ALJ also found that plaintiff had the following severe physical impairments as well: mild degenerative changes (osteoarthritis) at multiple levels of the lumbosacral spine, with slight disc space narrowing at L2-L3 and L5-S1, vacuum disc phenomenon, a transitional S1 vertebrae; bilateral carpal tunnel syndrome; migraine headaches; brachial radialis tendinitis of the left arm; obesity; minimal right convex scoliosis; left hip osteoarthritis; and heel spur of the right foot. At step three, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or equaled any of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then concluded at step four that plaintiff was not disabled because she retained the residual functional capacity to perform light or sedentary work, with some restrictions and, therefore, could return to her past relevant work as a semi-automatic sewing machine operator. (T. 8-22).

### III.   Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner.  *Veino*, 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law.  *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773.  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled.  "Failure to apply the correct legal standards is grounds for reversal."  *Townley*, 748 F.2d at 112.  Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998)("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

have her disability determination made according to the correct legal principles.'")(quoting *Johnson*, 817 F.2d at 986).

Here, the Commissioner argues that substantial evidence in the record exists to support ALJ Gregg's determination that plaintiff is not disabled. Plaintiff, however, contends that the ALJ Gregg's decision is based on legal errors and is not supported by substantial evidence.

I agree with plaintiff and find that ALJ Gregg erred in evaluating the opinions of plaintiff's treating and examining physicians, and that this resulted in a residual functional capacity that did not take into account the full extent of plaintiff's mental and physical impairments.  I also find that the ALJ failed to assess plaintiff's obesity in accordance with the Commissioner's rulings. Because ALJ Gregg's decision did not apply the correct legal standards, it is reversed.

## IV.     Weight to be Given to the Opinions of Treating and Examining Physicians

It has long been recognized that the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir.1999); *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).   In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §§ 404.1527(d); 416.927(d).

When controlling weight is not given to a treating physician's medical opinion, the ALJ must explain his reasons for the weight he does assign to that opinion. *Shaw v. Chater*, 221 F.3d 126, 134

(2d Cir.2000); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.")(internal quotations omitted).[2]  Furthermore, in analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (citing *McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)).

The Appeals Council drew specific attention to these well-established principles in its September 12, 2000 Order remanding the case to ALJ Gregg for a new hearing and decision.  The Council noted that in the first two administrative decisions, ALJ Dombeck failed to consider or discuss the opinions of plaintiff's treating psychiatrists and physicians, Dr. Katherine Jacobs, Dr. Allen S. Mariner, and Dr. David Ness, and failed to explain why he did not accord those opinions controlling weight.  The Council gave ALJ Gregg specific instructions to evaluate the opinions of these particular physicians in accordance with 20 C.F.R. §§ 404.1527 and 416.927. (T. 846).[3]

---

[2]  Moreover, more weight generally should be given to the opinions of physicians who examine plaintiff than to the opinions of non-examining State Agency review physicians, who review written medical records, but do not conduct physical examinations themselves. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1).

[3]  The Order provided that, "Upon remand, the Appeals Council directs that this case be assigned to another Administrative Law Judge who will consider the opinions of the claimant's treating sources and examining sources including those of Drs. Mariner, Ness, and Jacobs pursuant to the provisions of 20 C.F.R.404.1527 and 416.927 and Social Security Ruling 96-6p and explain the weight given to such opinion evidence; . . ." (T. 846).

In her August 2002 decision, however, ALJ Gregg failed to follow the Appeals Council's instructions.[4]  The ALJ did not so much as make a passing reference to the reports or opinions of either Dr. Jacobs or Dr. Mariner, two psychiatrists who examined and treated plaintiff for her mental impairments.   In addition, she failed to evaluate the opinions of Dr. Ness, plaintiff's family practitioner, regarding her mental or physical impairments.   This is significant because the opinions and reports of these treating physicians are at odds with the findings that ALJ Gregg made regarding plaintiff's mental and physical residual functional capacity.

### A.     Plaintiff's Mental Residual Functional Capacity

The Commissioner's regulations define "residual functional capacity" as the most a plaintiff can still do in a work setting on a regular and continuing basis[5] despite her physical and mental limitations.  20 C.F.R. §§ 404.1545(a); 416.945(a).   It is the responsibility of the ALJ to assess plaintiff's residual functional capacity, based on all the relevant evidence in the case record. *Id.* Further, "[t]he residual functional capacity assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A.); *see also Balsamo*, 142 F.3d at 80-81.

---

[4]  The Council also instructed ALJ Gregg to give further consideration to the plaintiff's residual functional capacity and to provide appropriate rationale with specific references to the evidence of record to support the assessed limitations. As discussed *infra*, ALJ Gregg did not comply with these directives either.

[5]  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *2 (S.S.A.).

ALJ Gregg found that, throughout the entire nine-year period at issue, plaintiff had "no significant limitation" in her ability to attend, concentrate, remember or follow instructions, and that she had a "mild limitation" in her ability to interact with others in personal, social and occupational settings. (T.19-20).

In contrast to this finding, however, Dr. Katherine Jacobs opined on August 26, 1993 that plaintiff suffered from major depression and could not tolerate the stress of *any* work environment. Dr. Jacobs also found that the external expectations of a work setting would increase plaintiff's depression. (T. 246-48).  Likewise, on March 28, 1996, Dr. Allen Mariner completed a mental evaluation of plaintiff and opined that since December 1992, and continuously thereafter, plaintiff suffered from dysthymic disorder[6] that met the level of severity of Section 12.04 of the Commissioner's listed impairments. (T. 382-85).

At that same time, Dr. Mariner also completed a mental residual functional capacity assessment (T. 376-81) in which he found that plaintiff had a "marked" impairment[7] in her ability to: concentrate and attend to tasks over an eight-hour period; work a normal eight-hour work day without psychologically based interruptions or distractions; respond appropriately to supervision or coworkers; perform ordinary routine tasks without inordinate supervision or frequent absences; exercise appropriate judgment or make simple work-related decisions; abide by occupational rules

---

[6] "Dysthymia" is defined as "A chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or over eating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness." *Stedman's Medical Dictionary* 556 (27th ed. 2000).

[7] A "marked" impairment is defined as an impairment which seriously affects the patient's ability to function independently, appropriately and effectively.

and regulations; make simple work-related decisions; maintain social functioning; deal with the

general public; and tolerate customary work pressures in a work setting.  He also found that she had

a "moderate" impairment[8] in her ability to comprehend and carry out simple and detailed instructions

and to remember work procedures.  Dr. Mariner gave his opinion that plaintiff's condition would

likely deteriorate if placed under stress, especially the stress of a job, given that she was "functioning

minimally at best" at that time. (T. 381).

Clearly these findings stand in stark contrast to ALJ Gregg's conclusion that plaintiff had "no

significant limitations" in her ability to attend, concentrate, remember or follow instructions, and

only a "mild limitation" in her ability to interact with others in an occupational setting. (T.19-20).

The ALJ, however, never explained why she failed to give controlling weight to the opinions of Dr.

Jacobs or Dr. Mariner.  Even if she thought controlling weight was not warranted, the ALJ needed

to explain the basis for whatever weight she chose to give these opinions.  ALJ Gregg's failure to

do so is inexcusable, particularly given that Judge Telesca and the Appeals Council both concluded

that ALJ Dombeck committed reversible error by not giving "serious consideration" to these

physicians' opinions. (T. 846).

The law is clear that "the Social Security Administration is required to explain the weight

it gives to the opinions of a treating physician." *Snell*, 177 F.3d at 133. "The requirement of

reason-giving exists, in part, to let claimants understand the disposition of their cases, even – and

perhaps especially – when those dispositions are unfavorable." *Id.* at 134.  The Commissioner's own

regulations require such disclosure as well. *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) ("We

---

[8] A "moderate" impairment is one which affects but does not preclude the ability to
function.

will always give *good reasons* in our notice of determination or decision for the weight we give your treating source's opinion.") (emphasis added); *accord Snell*, 177 F.3d at 133 ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.").

Moreover, the explanation that ALJ Gregg provided regarding the weight she gave to the opinions of the other psychiatric sources is inadequate to support her findings.  ALJ Gregg purportedly gave "greater weight" to the opinions of consulting psychiatrists Dr. Seymour Viener, Dr. Nelli Mitchell, and Dr. Robert J. Paluck, than she did to the conclusions of the non-examining State Agency Review physicians. (T.19).  The ALJ's residual functional capacity, however, is not supported by the opinions of either Dr. Viener or Dr. Mitchell.  On October 4, 1993, Dr. Viener conducted a consultative mental examination of plaintiff and concluded that she had a "marked difficulty" concentrating and suffered from dysthymic disorder. (T. 228).  Likewise, Dr. Mitchell prepared a consultative mental evaluation on June 14, 1994. In it, he concluded that plaintiff manifested signs and symptoms of anxiety and depression, and that her anxiety symptoms "significantly interfered with her ability to function in a group."  He also concluded that her mental impairments have "significantly impaired [plaintiff's] overall coping skills and functioning ability." (T. 258).

In addition, Dr. Mariner reported in October 30, 1996 discharge summary from Ontario County Mental Health Center that in April 1996, plaintiff began experiencing increasing anxiety symptoms, including panic attacks. After further evaluation, he changed her diagnosis from "dysthymic disorder" to "anxiety disorder, not otherwise specified." (T.627-28).  After moving from

Ontario County in the Fall of 1996, she received mental health treatment from the Livingston County Mental Health Services from November 1996 through January 1999.  There, she was treated by social workers and two different psychiatrists, Dr. P. Reddy and Dr. I. Mustafa. (T. 612-24; 653-54; 1018-1020).  These records indicate that plaintiff continued to exhibit depressive and anxiety-related symptoms, and continued to take medication for those disorders, including Xanax, Elavil, Zoloft, and Wellbutrin.  However, her panic attacks began to improve with new medication.[9]  On January 15, 1999, plaintiff terminated services with Livingston County and transferred her care to her family practitioner, Dr. Ness, who continued to monitor her mental health prescriptions from that point forward.  (T. 1020).

On November 1, 2000, Dr. Ness completed a mental residual functional capacity assessment that found that her ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with a supervisor, function independently, and maintain concentration were limited, but satisfactory.  However, he believed that plaintiff had poor or no useful ability to deal with work stressors, and was seriously limited in her ability to understand, remember, and carry out complex, detailed or simple instructions, and was seriously limited in making personal-social adjustments, including behaving in an emotionally stable manner and relating predictably in social situations. (T. 955-56).  In reaching her conclusion regarding plaintiff's mental residual functional capacity, however, ALJ Gregg never addressed Dr. Ness's November 2000 mental evaluation.

The only examining medical opinion of record to support the ALJ's conclusion that plaintiff had no "significant" limitations resulting from her mental impairments is the consultative psychiatric

---

[9]   Indeed, she testified at the administrative hearing before ALJ Gregg that she had not had a panic attack since approximately 1997. (T.51).

evaluation of Dr. Paluck, dated February 22, 1997. (T. 536-39).  Dr. Paluck concluded that "[t]he

claimant *presents today* with no fundamental compromise of attention, concentration, memory,

intelligence or the ability to follow instructions" and "suffers from mild difficulty in her personal,

social and occupational adjustment." (T. 538-39) (emphasis added).  Importantly, his opinion does

not speak to plaintiff's mental health prior to the date of his February 1997 examination. This

opinion alone, however, does not constitute substantial contradictory evidence to justify completely

disregarding the opinions of the treating physicians, Dr. Mariner, Dr. Jacobs, and Dr. Ness. *See*

*Shaw*, 221 F.3d at 134. That is particularly so here, where their opinions are based on an established

treatment relationship and are consistent with the record as a whole. 20 C.F.R. §§ 404.1527(d)(2);

416.927(d)(2).

### B.     Plaintiff's Physical Residual Functional Capacity

I further find that ALJ Gregg's decision that plaintiff retained the physical residual functional

capacity to perform the full range of light or sedentary work is also based on legal errors and cannot

be supported by the record.  The ALJ failed to discuss (or even mention) the detailed physical

residual functional capacity assessment completed by Dr. Ness nor explain what weight, if any, she

accorded it.  Moreover, the ALJ committed legal error by not assessing the effect that plaintiff's

carpal tunnel syndrome and obesity had on her ability to perform work-related functions.

ALJ Gregg concluded that, throughout the nine-year period at issue, plaintiff had no

limitations on sitting, standing, or walking, and could lift, carry, push, and pull up to 20 lbs.

occasionally, and 10 lbs. frequently. Plaintiff, however, was unable to perform prolonged, repetitive,

or vigorous bending, stooping, or crouching, and she could only occasionally climb stairs and ramps,

but never climb ropes, ladders, or scaffolds.  She could occasionally kneel, crouch, stoop, crawl and balance, and she could use her hands and feet repetitively to operate controls.  (T.19-20).  Based on these restrictions, ALJ Gregg concluded that plaintiff was capable of performing light and sedentary work.  She also concluded, based on the testimony of the vocational expert, that with the residual functional capacity outlined above, plaintiff could perform her past relevant work as a semi-automatic sewing machine operator.  (T. 20).

In reaching this conclusion, however, the ALJ failed to cite to specific medical opinions or explain the evidentiary basis to support each of her residual functional capacity findings.  Further, she does not state how much weight she gave to any of the medical opinions of record regarding plaintiff's physical impairments.  Instead, the ALJ states in conclusory fashion that she "agree[d] with" the assessments of the State Agency review physicians.  Presumably, she is referring to the physical residual functional capacity assessments completed by two different State Agency physicians, one dated March 1997 and the other dated July 1997, that found that plaintiff could perform the full range of light work. (T. 473; 481).

It also appears that the ALJ relied on the opinion of Dr. Joseph A. Grossman, who performed a consultative examination of plaintiff on February 22, 1997.  A portion of the ALJ's residual functional capacity assessment is taken verbatim from Dr. Grossman's report.[10]  Nevertheless, the ALJ does not state whether she gave Dr. Grossman's report any weight.

More importantly, the ALJ implicitly rejected the opinion of Dr. Ness, plaintiff's long-standing treating physician.  Dr. Ness found that plaintiff's impairments resulted in a residual

---

[10]  Dr. Grossman opined that plaintiff could not perform "prolonged, repeated, vigorous bending, stooping, or crouching." (T. 531).

functional capacity to perform something less than the full range of even sedentary work.[11]   On

November 1, 2000, Dr. Ness opined that plaintiff could lift and carry less than 10 lbs. at one time.

He also determined that plaintiff could not sit or stand more than 20 minutes at one time, and not

more than two to three hours a day, and that she could not walk more than 10 minutes at one time,

nor more than one hour a day.  Further, plaintiff could never climb, stoop, crouch, kneel, crawl, bend,

or climb stairs, and could only occasionally balance, push or pull.  He also gave his opinion that

plaintiff would need to alternate between sitting and standing. (T. 953-54).

The ALJ failed to analyze Dr. Ness's detailed report.  This omission is striking in light of the

fact that it is completely inconsistent with the ALJ's findings regarding plaintiff's physical residual

functional capacities, and her determination that plaintiff could return to her past relevant work as

a semi-automatic sewing machine operator, a job that required a "light" exertional capacity.[12]   By

failing to discuss this report, or to accord it any weight, the ALJ "arbitrarily substitute[d] [her] own

judgment for competent medical opinion," and "set [her] own expertise against that of a physician

who [submitted an opinion to or] testified before [her]." *Balsamo*, 142 F.3d at 81 (citing *McBrayer*,

712 F.2d at 799.  Moreover, the ALJ failed to cite to substantial medical evidence from the record

that contradicted that opinion that would warrant discounting it. *See* 20 C.F.R. §§ 404.1527(d)(2);

416.927(d).

---

[11]   "Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983).

[12]   "Light" work generally involves lifting and carrying 20 lbs. frequently and 10 lbs. occasionally.  It also requires "a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b); 416.967(b).

Earlier in her decision, the ALJ rejected a 1995 report from Dr. Ness that plaintiff could only work part-time, citing the fact that his opinion "was based in large part upon the claimant's subjective complaints rather than the objective medical evidence."  The Second Circuit has made clear, however, that an ALJ cannot simply discount a treating physician's opinion based on a lack of clinical findings that accompany that opinion. *Schaal*, 134 F.3d at 505; *see also Balsamo*, 142 F.3d at 80-81 (ALJ erred by failing to accord controlling weight to treating physician's opinions where there was no other medical opinion in the record that disputed their findings). Rather, the ALJ has an affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998); *Schaal*, 134 F.3d at 505; *see also Pronti v. Barnhart*, 339 F.Supp.2d 480, 490 (W.D.N.Y.2004).

Moreover, the ALJ erred by failing to weigh the opinions of plaintiff's treating physicians regarding her carpal tunnel syndrome.  There are repeated references in the medical records to pain, numbness, tingling in plaintiff's right and left hands and arms due to this impairment. (T. 263, 266, 286-88, 448, 560, 645-46, 1056).  In October 2001, Dr. Robert S. Knapp, a neurologist, performed a series of electrodiagnostic tests of plaintiff's hands and arms and found that she had bilateral carpal tunnel syndrome with some early denervation and that she was a candidate for surgery.  In November 2001, plaintiff underwent two surgeries to relieve her carpal tunnel syndrome in both of her hands.

Despite this evidence, the ALJ concluded at step four that plaintiff retained the residual functional capacity to return to her prior work as a semi-automatic sewing machine operator.  The Dictionary of Occupational Titles indicates that, as it is normally performed in the national economy,

the work of a semi-automatic sewing machine operator (DOT no. 786.685-030) requires constant and repetitive reaching, handling, and fingering of objects. The ALJ did not question the vocational expert about or discuss in her decision the effect that plaintiff's long-standing carpal tunnel syndrome would have had on her ability to perform this type of work, at least prior to the corrective surgeries.

ALJ Gregg committed further legal error by failing to consider the effect that plaintiff's obesity had on the severity of her physical impairments and her ability to perform basic work activities. Several treating and examining sources noted throughout the nine-year period of alleged disability that plaintiff was morbidly obese. (T. 281; 284; 556; 530). Dr. Ness completed an obesity report in December 2001 finding that plaintiff suffered from extreme obesity, with a body mass index greater or equal to 40. (T. 1051-1053). He opined that her obesity created a marked limitation in her ability to walk and stand, and created pain and stiffness in her weight bearing joints. He also gave his opinion that plaintiff's obesity resulted in fatigue, shortness of breath, weakness, dizziness, insomnia and pain, and that these symptoms significantly interfered with plaintiff's ability to sustain work activity for a full eight-hour workday. (T. 1052).

The effect that plaintiff's obesity had on her physical impairments, specifically her osteoarthritis in her back,[13] is significant. In fact, one of the Commissioner's consulting physicians, Dr. Bharat Gupta, opined in September 1994 that plaintiff's lumbosacral spine dysfunction and decreased range of motion were "no doubt" aggravated by her obesity. (T. 263).

---

[13] The medical records indicate that Dr. Ness first diagnosed plaintiff with osteoarthritis in approximately 1993. X-rays taken on August 29, 1998 also revealed spinal malalignment, degenerative osteoarthritic changes, and disc space narrowing. (T. 989).

Although the ALJ found at step two that plaintiff suffered from obesity and that it was a severe impairment, she failed to consider its effects throughout the remainder of the disability analysis.  *See* Social Security Ruling 00-3p (entitled "Titles II and XVI: Evaluation of Obesity"), 2000 WL 33952015 (S.S.A.) (explaining how obesity is to be considered at each step of the five-step disability evaluation) ("SSR 00-3p").[14] As SSR 00-3p recognizes, an individual with obesity "may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect [the] ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers." SSR 00-3p, 2000 WL 33952015, at *6.  Therefore, SSR 00-3p instructs that "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time." *Id.*  It also recognizes that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." *Id.*

The ALJ, however, committed legal error by failing to consider the effect that plaintiff's obesity had on her physical impairments, her residual functional capacity, and her ability to perform either her past relevant work or other work in the national economy.  *See Willoughby v. Comm'r of*

---

[14] SSR 00-3p was superceded on September 12, 2002 by SSR 02-1p and is currently the controlling ruling regarding obesity. However, for purposes of this discussion, SSR 00-3p was the controlling ruling at the time of the ALJ's decision.

*Soc. Sec.*, 332 F.Supp.2d 542, 549 (W.D.N.Y.2004) (reversing ALJ's decision denying disability where ALJ did not consider the effect that plaintiff's obesity had on the severity of her impairments, her residual functional capacity, and her ability to do basic work activities); *Shoate v. Barnhart*, No. 02-02162, 2003 WL 21556939, *4 (N.D.Cal. July 3, 2003) (error for ALJ not to consider the evidence of plaintiff's obesity in determining whether plaintiff suffered from a severe impairment or combination of impairments); *Manning v. Barnhart*, No. 01-1151, 2002 WL 31027937, *2-*3 (D.Kan. Sept.9, 2002) (ALJ was required to make clear at step three and in determining plaintiff's residual functional capacity the impact of plaintiff's obesity on her impairments).

In light of the ALJ's numerous legal errors in assessing plaintiff's mental and physical impairments, her determination that plaintiff was not disabled must be reversed and remanded to the Commissioner for a fourth time.   The only question that remains is what type of remand is warranted.

## V.    Remand Solely for Calculation of Benefits

I find that the case should be remanded solely for the calculation and payment of benefits. Twelve years have elapsed since plaintiff filed her first set of applications. The Commissioner has had numerous opportunities to apply the correct legal standards and to weigh the evidence properly. The case has already been remanded three times, the Commissioner has held three different administrative hearings and issued three different decisions by two different ALJs.  The record needs no further development.  More administrative proceedings or another hearing, therefore, would serve no useful purpose. *Johnson*, 817 F.2d at 986; *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980).

The medical evidence, including the opinions of plaintiff's treating physicians, together with the vocational expert testimony, compel only one conclusion – that plaintiff's mental and physical impairments precluded her from returning to her prior work or from performing any other work.

At the administrative hearing, vocational expert Ms. Julie Andrews testified that if plaintiff had the mental limitations outlined in Dr. Mariner's March 27, 1996 mental evaluation, those limitations would preclude any of her past relevant work or any other work in the national economy. (T. 78-79). In addition, Ms. Andrews testified that, with the limitations outlined by Dr. Ness in his November 1, 2000 assessment, plaintiff could not perform any of her past relevant work nor any other work in the national economy for any length of time. Ms. Andrews reasoned that, although plaintiff may be able to get hired, she would not be able to maintain those positions because of her unreliability and other mental limitations. (T. 80-81). Although there is evidence that plaintiff's mental impairments improved with medication and were no longer of disabling severity, the record contains substantial evidence, discussed *supra*, that plaintiff's physical impairments also precluded her from returning to her past relevant work.

Thus, the burden shifted to the Commissioner at step five to prove that there were other jobs that plaintiff could perform, in light of her age, education, work experience, and residual functional capacity. *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir.2002).

The Commissioner has failed not once, but three times, to meet that burden in this case. I see no reason why she should be given a fourth opportunity to do so. *Orr v. Barnhart*, 375 F.Supp.2d 193, 198 (W.D.N.Y.2005). "Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for

calculation of benefits is appropriate." *Martinez v. Comm'r*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003);

*see also Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000)(remanding for the sole purpose of

calculating an award of benefits where Commissioner failed to prove that plaintiff could perform

other work and application had been pending more than six years); *Balsamo*, 142 F.3d at 82

(remanding for benefits based on errors at step five and where application had been pending for four

years); *Huhta v. Barnhart*, 328 F.Supp.2d 377, 387 (W.D.N.Y.2004)(remanding solely for

calculation of benefits and not further administrative proceedings where ALJ's error was in

interpreting and weighing the treating physician's opinions, not in failing to develop a more complete

record); *Soto v. Barnhart*, 242 F.Supp.2d 251, 254 (W.D.N.Y.2003)(same).


## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt. #17) is granted and the

Commissioner's motion (Dkt. #24) is denied.  The case is remanded solely for the calculation and

payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
        November 14, 2005.